913 A.2d 654

**MAX'S OF CAMDEN YARDS**

v.

**A.C. BEVERAGE.**

**No. 423, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

Dec. 26, 2006.

140

Mark T. Mixter, Baltimore, for appellant.

Christopher J. Lyon (Robert L. Hebb, Semems, Bowen & Semmers, on brief), Baltimore, for appellee.

Panel JAMES R. EYLER, CHARLES E. MOYLAN, JR., (Ret., specially assigned), LAWRENCE F. RODOWSKY, (Ret., specially assigned), JJ.

EYLER, JAMES R., J.

Max's of Camden Yards, L.L.C. ("Max's") and Insurance Designers of Maryland, Inc., Max's liability insurer, appellants, filed a complaint, later amended, in the Circuit Court for Baltimore City against A.C. Beverage, Inc. ("A.C. Beverage"), Selective Insurance Company of America ("Selective"), A.C. Beverage's liability insurer, appellees, and Chad Burger ("Burger").[1] Prior to the filing of the complaint in this case, Burger had sued Max's and A.C. Beverage, alleging that they negligently had caused Burger to sustain personal injuries, and appellees had settled Burger's claims against both Max's and A.C. Beverage, without any contribution from appellants. In this case, appellants seek to be indemnified for attorney's fees and costs incurred in the defense of the Burger suit. Appellants also seek a declaration that appellees must indemnify them in any future actions brought by parties alleging injuries sustained in the same manner as Burger.

## Overview

 Generally, if more than one tortfeasor is found liable to a plaintiff, and one of them is found to be passively negligent, the passively negligent tortfeasor has a right of implied indemnity against an actively negligent tortfeasor.

Usually, the issue of implied indemnity is addressed either after findings of fact have been made in the underlying case or as a preliminary matter when later fact findings are contemplated in the underlying case. In the case before us, the issue of implied indemnity arose after the tort plaintiff's claims were settled and, therefore, in the absence of findings of fact, or contemplated findings of fact, in the underlying case.

Stated briefly, Burger, the tort plaintiff, sued two alleged tortfeasors, Max's and A.C. Beverage, claiming compensation for personal injuries allegedly caused by the tortfeasors' negligence. Prior to trial, one of the tortfeasors, A.C. Beverage, settled all of the plaintiff's claims and obtained a release of

---

1. Burger is not a party on appeal.

itself and the other tortfeasor. The non-settling tortfeasor, Max's, then filed a separate indemnity action against the settling tortfeasor, A.C. Beverage, alleging that the settling tortfeasor was actively negligent and that it, the non-settling tortfeasor, was only passively negligent. The non-settling tortfeasor claimed that it was entitled to be indemnified for the attorney's fees and costs incurred in defending the tort plaintiff's claims, and for the attorney's fees and costs it was incurring in pursuing its indemnity claim. The two insurance carriers, parties on this appeal, are parties only by virtue of being liability carriers for the two alleged tortfeasors.

An implied indemnity action between alleged or actual tortfeasors based on the active-passive negligence distinction is recognized under Maryland law. It is unclear, however, whether and, if so, under what circumstances attorney's fees and costs, as distinguished from losses or damages, may be recovered in such an implied indemnity action.

The primary issue before us is whether, on the facts of this case, the non-settling tortfeasor has a valid indemnity claim for attorney's fees and costs against the settling tortfeasor. The answer ultimately turns on: (1) whether Maryland recognizes a right to recover attorney's fees and costs as an element of recovery if an implied indemnity action otherwise lies; and, if so, (2) whether the right to indemnity is controlled by the tort plaintiff's allegations against each tortfeasor, i.e., whether active or passive negligence was alleged, or by the facts as found after a trial; and (3) if both active and passive acts of negligence were alleged against the non-settling tortfeasor, regardless of whether indemnity is controlled by the allegations or the facts as found, whether the attorney's fees and costs the non-settling tortfeasor seeks to recover should be apportioned between defense of the active negligence claims and defense of the passive negligence claims. To our knowledge, there are no Maryland cases squarely on point.

We expressly do not answer the above questions generally, confining our holding to the facts of this case. We do so because we have determined that it is virtually impossible to

anticipate the various factual situations that may arise and fashion rules governing each.

 We hold that when: (1) the tort plaintiff sues more than one alleged tortfeasor and alleges active negligence against the tortfeasor seeking indemnity, and (2) the tort plaintiff's suit is dismissed as to the alleged tortfeasor seeking indemnity and the alleged tortfeasor from whom indemnity is sought prior to adjudication of tortfeasor status, then (3) the alleged tortfeasor seeking indemnity is not entitled to fees and costs incurred in defending the tort plaintiff's claims or fees and costs incurred in pursuing the indemnity action.

### Factual and Procedural Background

According to appellants' amended complaint, Max's owned and operated a restaurant and bar. Pursuant to an agreement between Max's and A.C. Beverage, A.C. Beverage was responsible for inspecting and cleaning the beer lines in Max's establishment.

Several patrons at Max's restaurant and bar became ill after allegedly consuming tainted beer. One such patron, Burger, brought a claim for damages against Max's and A.C. Beverage, who had serviced the lines that carried the beer from the keg to the beer tap.

As an exhibit to the amended complaint, appellants attached a copy of the complaint filed by Burger. In his complaint, Burger alleged that he became violently ill and suffered severe injuries after consuming beer at Max's due to (1) Max's negligence in failing to properly inspect, maintain and clean its facilities; in negligently hiring incompetent and negligent contractors to inspect, maintain, and clean its facilities; in negligently supervising the contractors that it hired, and (2) A.C. Beverage's negligence in failing to properly inspect, maintain and clean the beer lines.

Burger's action never reached trial as Burger settled all of his claims in exchange for money paid by Selective, A.C. Beverage's insurer. Appellants did not contribute to the settlement. Burger executed a general release, which re-

leased both alleged tortfeasors, and dismissed his complaint with prejudice.

Appellants' amended complaint contained four counts. Count I was styled "declaratory judgment-the Burger action" and requested a declaration that appellees were required to indemnify appellants for the fees and costs incurred in defending the Burger action. Count II was styled "breach of contract." The count is vague, but at oral argument appellants asserted that the contract referred to was the contract between Max's and A.C. Beverage. Count III was styled "indemnification" and sought a judgment for the fees and costs incurred in defending the Burger action and in pursuing the action against appellees. Count IV was styled "declaratory judgment-subsequent claims" and requested a declaration that appellees shall indemnify appellants, for both costs of defense and damages, in any other claims filed by patrons of Max's, alleging injuries as a result of drinking tainted beer.

Appellees filed a motion to dismiss the amended complaint on the ground that no indemnification was owed by either Selective or A.C. Beverage and, specifically, that Selective had no contractual relationship with appellants.

Following oral argument, the circuit court granted appellees' motion to dismiss by order, incorporating the reasons stated on the record at oral argument. With respect to the indemnity claim, it appears the court relied heavily on this Court's decision in *Boatel Industries, Inc. v. Hester*, 77 Md. App. 284, 550 A.2d 389 (1988). With respect to the request for declaratory relief as to any future claims by persons claiming personal injury as a result of ingesting tainted beer, the court found that appellants had not presented a justiciable controversy.

## Contentions

Appellants sought indemnification for fees and costs incurred (1) in defense of the Burger action, and (2) in pursuing this action. Appellants also requested a declaration of the

indemnification rights of the parties with respect to any future claims. We shall examine the contentions in the order listed.

There is no need to address other contentions except to state that there was no contract or tort relationship between appellants and Selective, A.C. Beverage's insurer, and appellants have no valid direct claim against Selective. Additionally, while Count I was styled a request for declaratory relief, it related to the Burger action. Resolution of the indemnity claim in Count III effectively declared the rights of the parties in that regard. There was nothing to add. Finally, Count II, breach of contract, requires no discussion because, as confirmed at oral argument, the contract was alleged solely to provide a basis for imposing a tort duty on A.C. Beverage. Appellants do not claim that appellees expressly agreed to indemnify appellants.

For the reasons set forth below, we shall affirm the judgment entered by the circuit court.

### Indemnification for the Burger Action

#### Passive/Active Negligence

A claim for indemnification may be based on an express contract or may be implied by law. In this case, we are not concerned with express indemnity. Indemnity between tortfeasors or alleged tortfeasors, the situation before us, falls within the concept of implied indemnity.

Implied indemnity between tortfeasors "arose in an era when contribution among joint tortfeasors was not permitted." *Franklin v. Morrison,* 350 Md. 144, 154, 711 A.2d 177 (1998). The right to contribution is now available pursuant to the Uniform Contribution Among Tortfeasors Act ("UCATA"), *see* Maryland Code (2002 Repl.Vol., 2006 Cum.Supp.) §§ 3–1401 to 3–1409 of the Courts and Judicial Proceedings Article ("C.J."). UCATA did "not impair any right of indemnity under existing law." *Id.* at 3–1406. Indemnity between tortfeasors continues to be developed by case law. For a thorough discussion of implied indemnity, and its application, *see Franklin,* 350 Md. at 154–58, 711 A.2d 177. *See also* Restatement of Torts

(Second) § 886B (identifying the situations in which indemnity is generally appropriate between tortfeasors) and Restatement (First) of Restitution §§ 89–98 (same).

■ The basis for implied indemnity is the concept "that one person is unjustly enriched at the expense of another when the other discharges liability that it should be his responsibility to pay." *Franklin,* 350 Md. at 154, 711 A.2d 177 (quoting Restatement (Second) of Torts § 886B cmt. c). The Restatement lists are not exclusive. *Id.* at 160, 711 A.2d 177. Indeed, it would be difficult, if not impossible, to synthesize all of the cases and develop a cohesive explanation for the results. Generally, implied indemnity is dependent on the relationship between the alleged tortfeasors or the nature of their respective acts.

Frequently occurring situations in which a right to implied indemnity between tortfeasors has been recognized include a tortfeasor liable (1) vicariously for the conduct of another, (2) for failing to discover a defect in a chattel supplied by another, (3) for failing to discover a defect in work performed by another, and (4) for failing to discover a dangerous condition on land created by another.

■ Of the various bases for indemnification, the basis relied on in this case is the distinction between active and passive negligence.[2] This right to implied indemnity exists when there is a disparity between the levels of fault of each tortfeasor that produces an unjust result, and the less culpable tortfeasor, said to be passively or secondarily negligent, pays or is held liable for damages which are properly attributable to the conduct of the more culpable co-defendant, who is primarily or actively negligent. *Hanscome v. Perry,* 75 Md. App. 605, 615, 542 A.2d 421 (1988) (citations omitted); *Gardenvillage Realty Corp. v. Russo,* 34 Md.App. 25, 40–41, 366 A.2d 101 (1976). This concept is based on the distinction

**2.** The parties have referred to the distinction between the levels of tort liability as active/passive or primary/secondary. We likewise will use these terms interchangeably.

between "active" and "passive," however, not on relative degrees of fault. Any other approach would be inconsistent with the UCATA because it apportions liability among tortfeasors on a pro rata basis, *see* C.J. § 3–1402, not on a relative fault basis. Maryland does not recognize comparative negligence. *See Franklin,* 350 Md. at 168, 711 A.2d 177.

We note that "[i]t is well established under Maryland law that one who is guilty of active negligence cannot obtain tort indemnification," regardless of whether the alleged tortfeasor from whom indemnity is being sought was actively negligent. *Franklin,* 350 Md. at 163, 711 A.2d 177.

The general rule is that, if an implied indemnity action lies, fees and costs are includible, particularly when the indemnitor was on notice of the underlying claim and was offered the opportunity to defend the indemnitee in the underlying claim. *See* 42 C.J.S. Indemnity § 42; 41 Am.Jur.2d Indemnity § 30. Regardless of what the general rule may be in other jurisdictions it is very doubtful, under Maryland law, whether and, if so, when attorney's fees and costs are recoverable in an implied indemnity action. It is highly doubtful, under Maryland law, whether fees and costs are recoverable as part of an indemnity claim based on the active-passive negligence distinction, under any circumstances that may exist in that context. In most of the Maryland cases addressing the active-passive negligence distinction, the Courts either concluded that there was no right to indemnity on the facts before it, *see Franklin,* 350 Md. 144, 711 A.2d 177, or the issue of recovery for attorney's fees and costs, as distinguished from damages, was not presented. *See Gardenvillage Realty Corp.,* 34 Md.App. 25, 366 A.2d 101.

The recovery of defense fees and costs was permitted in *Chesapeake & Ohio Canal Co. v. Allegany County Comm'rs,* 57 Md. 201 (1881) (noting that counsel fees should be available in indemnity cases as it would place an unfair hardship for a defendant to pay its own fees where it is answering essentially for the negligence of a co-defendant). The viability or extent of this holding is in question. It may

be limited to those situations in which, by virtue of the particular relationship of the parties, the law imposes a duty to defend, as well as to indemnify. A duty to defend is separate from a duty to indemnify. Generally, an alleged tortfeasor has no duty to defend another alleged tortfeasor.

In order to maintain an action for contribution, the tortfeasor seeking indemnity must be liable to a plaintiff, in addition to the tortfeasor from whom indemnity is being sought. Similarly, an action for indemnity based on the active-passive distinction generally requires shared liability. There are circumstances in which implied indemnity has been held to be available without a showing of liability by the indemnitee, but ordinarily, that result requires facts different from those in this case. For example, circumstances, particularly the relationship of the parties, may give rise to a duty by one entity to defend another entity. Another example is when a statute establishes a duty to defend. It may be that, in Maryland, recovery of defense fees and costs is limited to those situations.

Maryland does recognize that, when an innocent party is forced into litigation with a third party by the wrongful conduct of another, the innocent party can recover fees and costs incurred in defending itself from the culpable party. *See Chang v. Brethren Mut. Ins. Co.*, 168 Md.App. 534, 553, 897 A.2d 854 (2006).

In contrast to the above situations in which recovery of attorney's fees has been permitted, there are many Maryland appellate decisions stating that, generally, attorney's fees are not recoverable unless by contract, statute, or rule. *See Bresnahan v. Bresnahan*, 115 Md.App. 226, 243–47, 693 A.2d 1 (1997). The statements, however, are usually in the context of discussing the availability of attorney's fees as part of compensatory damages, and not in the context of identifying the extent of recovery in an implied indemnity action.

We conclude that it is very doubtful whether Maryland recognizes the right to recover defense fees and costs under any variation in circumstances discussed in this opinion, as an

element of recovery, in an implied indemnity action based on the active-passive distinction. This includes a situation in which the tortfeasor seeking indemnity was found to be passively negligent and the tortfeasor from whom indemnity is being sought was found to be actively negligent, at least absent some special relationship, beyond a contractual obligation by one to maintain facilities owned by another. Nevertheless, we shall assume, without deciding, for purposes of the remainder of the discussion, that attorney's fees and costs incurred in defense of the underlying tort claim may be available as an element of recovery under certain circumstances.

### The Burger Case

 Appellants seek indemnification for attorney's fees and costs incurred in defending the Burger action.[3] Appellants pursue indemnification based on their assertion that Max's was only passively negligent, while A.C. Beverage was actively negligent. Appellees respond that because Burger's complaint alleged active negligence on the part of both parties, no indemnification is owed.

The underlying complaint alleged active or primary affirmative acts of negligence by Max's (negligent inspection, hiring and supervision). The complaint did not assert liability based on mere nonfeasance, i.e., the mere sale of a defective product. Nevertheless, we recognize that, if Burger's claims were tried, it is possible, looking at the factual allegations in Burger's complaint and not just the theories, for Max's liability to be premised only on passive acts.

---

**3.** Generally, a claim for contribution and/or indemnity can be made in the underlying plaintiff's action, either by motion or cross claim. *See* Md. Rule 2-614. In that situation, the status of the alleged tortfeasors was determined before the motion was made, or in the event of a cross claim, tortfeasor status, for purposes of the cross claim as well as the plaintiff's claims, was determined as part of the same proceeding. Procedurally, a cross claim is not required, however, and a separate action can be maintained for contribution or indemnity. *See Lerman v. Heeman*, 347 Md. 439, 444-45, 701 A.2d 426 (1997). That is the situation before us.

■ Because the question of indemnity comes to us without the underlying issues having been tried, we must decide whether (1) the right to indemnity is determined by the allegations in the underlying complaint, or (2) determined by findings of fact and remand for a trial of the issues that would have been tried had Burger's claims not settled. In either event, we must decide whether the cost of defense is available and, if so, whether it should be apportioned between the defense of active negligence claims and the defense of passive negligence claims.

The two sub-questions have been addressed by a few courts in other jurisdictions. The sub-questions may arise in many, if not all, forms of indemnity actions. Thus, they may arise in situations in which indemnity is being sought on a basis other than the basis in this case. We shall refer to a few decisions from other jurisdictions, acknowledging that we have made no effort to identify and categorize all such cases. Some of the cases are reconcilable on their facts, but all are not.

■ We hold that when the implied indemnity claim is for counsel fees and costs, fees are unrecoverable when the tort plaintiff's complaint alleged primary or active negligence, in whole or in part, against the alleged tortfeasor seeking indemnity, and the underlying case was dismissed prior to any factual findings. We wish to emphasize that our holding is narrow. For example, we express no opinion as to whether an implied indemnity claim for counsel fees and costs would be available in the situation before us, had the allegations been solely against Max's. Nor do we decide whether an implied indemnity claim for counsel fees and costs, alone, or in addition to all or a portion of the tort plaintiff's damages, for which the tortfeasor seeking indemnity has been held liable or has paid (pursuant to settlement or judgment), is available when the tort plaintiff alleged active negligence, passive negligence, or both, against the alleged tortfeasor seeking indemnity, but after a factual hearing involving the tort plaintiff, the tortfeasor seeking indemnity was determined to have been only passively negligent.

There is support for the proposition that the nature of each party's negligence, active versus passive, is determined based on the pleadings by the tort plaintiff. In *Chesapeake & Ohio Canal Co.*, 57 Md. 201, the Court quoted with approval from *Inhabitants of Westfield v. Mayo*, 122 Mass. 100, 109 (1877). The discussion by the Massachusetts court suggested that, if a defendant is compelled to defend an action based solely on the misfeasance of another, the defendant may be able to recover the cost of defense. 122 Mass. at 105–09.

In *Chesapeake & Ohio Canal Co.*, the canal company, while performing maintenance, cut a bridge over the canal, which serviced a public road, and then repaired the bridge. The tort plaintiff was injured because of a defect in the bridge. The canal company was held liable, but the County Commissioners were also held liable, based on their responsibility to maintain public roads. The Court held that the Commissioners were entitled to indemnity from the canal company, including attorney's fees incurred in defense of the claim, because their liability was based on the canal company's wrongdoing. The claim against the Commissioners was based entirely on their responsibility for the actions of others and not on their own misfeasance. The case is not on point, however, because the issues of tortfeasor status had been determined at the time the indemnity issue was presented.

*Pyramid Condo. Assoc. v. Morgan,* 606 F.Supp. 592 (D.Md. 1985), is helpful. In that case, the court granted a motion to dismiss a third party complaint seeking indemnity based on the active-passive negligence distinction. The court observed that the claims by the tort plaintiff against the third party plaintiff were based on facts which, if proved, would constitute active acts of negligence and intentional torts. *Id.* at 596. Thus, the court reasoned that the third party plaintiff could not be entitled to indemnity because its liability, if any, would be based on active negligence. *Id.*

As we observed in *Bd. of Trustees of Baltimore County Cmty. Colleges v. RTKL Assocs., Inc.,* 80 Md.App. 45, 56–57, 559 A.2d 805 (1989), the court in *Pyramid* did not hold that, in

order for indemnity to lie, passive negligence must be alleged in the underlying plaintiff's complaint. Rather, the basis of the court's ruling was that it was clear from the alleged underlying *facts*, regardless of the theories alleged, that the third party plaintiff could not possibly be held liable on any passive negligence theory.

Having mentioned *Bd. of Trs. of Balt. County Cmty. Colls.*, we shall discuss it a bit further. In that case, we suggested that an indemnity claim might lie, after factual findings in the tort plaintiff's case, even though the allegations against the tortfeasor seeking indemnity were not limited to passive acts. *Id.* at 56–57, 559 A.2d 805. The issue before the Court was the effect of a jury verdict pursuant to which the jury found the defendants liable but then attempted to apportion the damages based on a finding of relative fault of the defendants. The jury could not do this under Maryland law, which does not recognize comparative negligence. We observed that, because the complaint by the tort plaintiff alleged active and passive acts, a jury could have determined that the tortfeasor seeking indemnity was passively negligent only. *Id.* at 56, 559 A.2d 805. In that situation, indemnity could not be ruled in or out as a matter of law. We held that the verdict could not be saved, and reversed and remanded for a new trial. *Id.* at 56–57, 559 A.2d 805. In that context, we suggested that indemnity might be available, dependent on the findings at the new trial.

As noted above, in the case before us, the circuit court placed great emphasis on *Boatel Indus., Inc. v. Hester*, 77 Md.App. 284, 550 A.2d 389. In *Boatel*, the tort plaintiff buyer sued the retail seller and the manufacturer of a boat, for breach of warranty and negligent misrepresentation. In a cross claim, the retail seller sought indemnity because any liability was due solely to the acts, omissions, conduct and negligence of the cross defendant manufacturer. At trial, at the conclusion of the evidence, the court granted the dealer's motion for judgment on the cross claim, stating that any judgment entered against the dealer would be passed on to the manufacturer. The jury returned a verdict against the

manufacturer only. On the cross claim, the court entered judgment against the manufacturer for the dealer's fees and costs incurred in defending the claims against it.

On appeal, this Court reversed. We observed that the cross claim requested contribution or indemnification, in the alternative, on the ground that the parties were joint tortfeasors, whereas on appeal, the dealer relied on a different theory. 77 Md.App. at 309, 550 A.2d 389. In addition, we pointed out that the dealer had been found not to be liable. Generally, liability is required for indemnity between active and passive tortfeasors. *Id.* Finally, we observed that the allegations in the suit against the dealer were that it engaged in wrongdoing, and the dealer defended those allegations of its own wrongdoing. *Id.* at 310, 550 A.2d 389. We saw no applicable exception to the general rule that legal fees incurred by a successful party are not recoverable. *Id.*

While the *Boatel* Court's conclusion that indemnity was unavailable rested upon several bases, it is supportive of our resolution of this case to the extent that it held indemnity inappropriate when a party incurs fees in successfully rebutting claims of its own active negligence, and when a fact finder has not determined it to be a tortfeasor.

There are several cases in other jurisdictions, addressing the question of indemnification for attorney's fees as between alleged tortfeasors, in which the courts have discussed the effect of allegations versus facts as found and the question of apportionment between acts subject to indemnity versus those that are not. We have not identified and categorized all of those cases. While some cases are undoubtedly reconcilable on their facts, our review indicates that all are not.

Some cases suggest that the right to indemnity is determined by the underlying plaintiff's allegations. *See, e.g., Safeway Stores v. Chamberlain,* 451 A.2d 66, 70–72 (D.C.1982) (indemnity is dependent on allegations); *Rauch v. Senecal,* 253 Iowa 487, 112 N.W.2d 886, 888 (Iowa 1962) (indemnity is dependent on allegations); *but see Peters v. Lyons,* 168 N.W.2d 759, 770–71 (Iowa 1969) (suggesting indemnity should depend on factual findings); *Unisys Corp. v. Frank H. Poe,*

*Inc.,* 576 So.2d 874, 875 (Fla.Dist.Ct.App.1991) (indemnity is dependent on allegations).

There is authority supporting the contrary view, i.e., the right to indemnification should be determined by findings of fact. *See INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.,* 150 Ariz. 248, 722 P.2d 975, 980 (1986) (noting that "an obligation [to indemnify] . . . cannot be imposed solely by a third party's unproven allegations against the indemnity parties, but requires factual determinations"); *Ins. Co. of N. Am. v. King,* 340 So.2d 1175, 1176 (Fla.Dist.Ct.App.1976) (noting that it "is an indemnitee's actual wrongdoing or lack of it, rather than allegations of wrongdoing, which determine the indemnitee's rights").

The court, in *INA Ins. Co. of N. Am.,* discussed the question of apportionment in situations in which the tort plaintiff pursues claims subject to indemnity and claims not subject to indemnity. The court stated that recovery of defense costs should be available but limited to costs attributable to claims for which the indemnitee was entitled to receive indemnity. 722 P.2d at 982. In contrast, in *Blueberry Place Homeowners Assoc. v. Northward Homes, Inc.,* 126 Wash. App. 352, 110 P.3d 1145, 1151 (2005), the court concluded that, because the alleged tortfeasor defended active negligence claims, in addition to other claims, attorney's fees would not be apportioned, and would not be recoverable. It is interesting to note that, in *Blueberry Place,* the alleged tortfeasor seeking indemnity settled with the tort plaintiff and then sought to recover attorney's fees from other alleged tortfeasors.

A determination of whether appellants are entitled to indemnification, based on findings of fact, in the context in which the issue comes before us, would require a factual resolution of Burger's claims. On remand, appellants would have the burden of demonstrating A.C. Beverage's primary negligence while proving Max's mere secondary negligence. This would be a difficult burden but, more important, presents artificial issues in a setting in which it would be difficult to duplicate the trial, had Burger not settled. We decline to reach this result.

## Indemnification for the Present Action

■ Appellants' seek indemnification for fees and costs incurred in bringing this action for indemnification. Although we have found no Maryland authority directly on point, a large number of decisions in other jurisdictions conclude that, even when indemnification for the expense of defending the underlying claim is available, counsel fees expended in establishing the right to indemnification will not be awarded. *See, e.g.*, 42 C.J.S. Indemnity § 42 ("While the right of indemnity under general indemnity principles includes the right to attorneys' fees incurred in defending the underlying claim, it does not include the right to fees incurred in establishing the right of indemnity."); *INA Ins. Co. of N. Am.*, 722 P.2d at 983 ("Under general indemnity principles ... the right of indemnity ... does not include the right to fees incurred in establishing the right of indemnity."); *Saks Intern., Inc. v. M/V "Export Champion"*, 817 F.2d 1011, 1014 (2d Cir.1987) (*quoting Peter Fabrics, Inc. v. S.S. "Hermes"*, 765 F.2d 306, 315–16 (2d Cir.1985) (Friendly, J.)) ("This obligation to indemnify the primary defendant for his litigation expenses does not, however, extend to the expenses incurred in establishing the [defendant's] indemnity obligations, since such expenses 'fall within the ordinary rule requiring a party to bear its own expenses of litigation.' "); *Gen. Elec. Co. v. Mason & Dixon Lines, Inc.*, 186 F.Supp. 761, 766 (D.Va.1960) ("The allowance of attorneys' fees should be limited to the defense of the claim indemnified against and does not extend to services rendered in establishing the right of indemnity ... there should be no recovery for attorneys' services and expenses incurred in establishing the right of indemnity."). Thus, even if attorney's fees and costs incurred in defending the Burger action were available to appellants, and they are not, appellants still could not recover the fees and costs incurred in seeking indemnification.

## Declaratory Judgment for Future Claims

■ In dismissing appellants' amended complaint, the circuit judge specifically noted that "I don't believe that this

court has a crystal ball. We can't anticipate. We don't know what the underlying causes of action will be or what is primary negligence or not."

We agree that Count IV did not present an actual and justiciable controversy. As this Court has stated, "One thing is clear, however: 'In a declaratory judgment proceeding, the court will not decide future rights in anticipation of an event which may never happen, but will wait until the event actually takes place, unless special circumstances appear which warrant an immediate decision.' " *Anne Arundel County v. Ebersberger,* 62 Md.App. 360, 368, 489 A.2d 96 (1985) (*quoting Tanner v. McKeldin,* 202 Md. 569, 579, 97 A.2d 449 (1953)). It is entirely unclear whether any other person will bring suit against appellants. Moreover, it is impossible to determine whether the facts in those cases would be the same as or similar to the facts in the Burger case.

Appellants allege that, even if this count fails to present an actual controversy, because any other claims brought by patrons injured at the time Mr. Burger was injured will likely settle, this case should be treated like cases which are heard, because of mootness, to prevent the issue contained within the case from evading review. *See Stevenson v. Lanham,* 127 Md.App. 597, 612, 736 A.2d 363 (1999) (noting that a "case that is moot will be dismissed without a decision on the merits of the controversy unless it presents unresolved issues in matters of important public concern that, if decided, will establish a rule for future conduct") (internal quotation marks and citations omitted).

We have not determined that appellants' claim was moot. Instead, we have concluded that the claim lacked ripeness. Determining how injuries were caused and who was responsible for those injuries, in claims which may never be brought, for an uncertain number of plaintiffs, some of whom may not yet be identified, would simply be unworkable. The circuit court was justified in determining that Count IV failed to present an actual and justiciable controversy.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**