**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 21-2357**

---

KERALINK INTERNATIONAL, INC.,

         Plaintiff - Appellee,

    v.

GERI-CARE PHARMACEUTICALS CORPORATION,

         Defendant - Appellant,

   and

STRADIS HEALTHCARE, LLC; KAREWAY PRODUCT, INC.; INSOURCE, INC.,

         Defendants.

---

**No. 21-2404**

---

KERALINK INTERNATIONAL, INC.,

         Plaintiff - Appellee,

    v.

STRADIS HEALTHCARE, LLC,

         Defendant - Appellant,

   and

GERI-CARE PHARMACEUTICALS CORPORATION; INSOURCE, INC.; KAREWAY PRODUCT, INC.,

          Defendants.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore. Catherine C. Blake, Senior District Judge.  (1:18−cv−02013−CCB)

_____

Argued:  December 6, 2022                    Decided:  February 15, 2023

_____

Before HARRIS and QUATTLEBAUM, Circuit Judges, and KEENAN, Senior Circuit Judge.

_____

Affirmed by published opinion.  Judge Keenan wrote the opinion, in which Judge Harris and Judge Quattlebaum joined.

_____

**ARGUED:**  Danielle D. Giroux, HARMAN CLAYTOR CORRIGAN & WELLMAN, Glen Allen, Virginia; Kelly Marie Lippincott, GORDON REES SCULLY MANSUKHANI, LLP, Alexandria, Virginia, for Appellants.  John Augustine Bourgeois, KRAMON & GRAHAM, P.A., Baltimore, Maryland, for Appellee.  **ON BRIEF:** John D. Perry, HARMAN CLAYTOR CORRIGAN & WELLMAN, Alexandria, Virginia, for Appellant Geri-Care Pharmaceuticals Corporation.  Jonathan A. Barnes, GORDON REES SCULLY MANSUKHANI, LLP, Alexandria, Virginia, for Appellant Stradis Healthcare, LLC.  B. Summer Hughes Niazy, KRAMON & GRAHAM, P.A., Baltimore, Maryland, for Appellee.

_____

2

BARBARA MILANO KEENAN, Senior Circuit Judge:

In this appeal, we consider whether the district court erred in awarding summary judgment to plaintiff KeraLink International, Inc. (KeraLink), the former operator of a national network of "eye banks," on its claim against two suppliers of contaminated eyewash used to remove donated eye tissue for future transplant. Upon our review, we hold that the district court properly awarded judgment to KeraLink on its claim of strict products liability. Under the facts presented here, neither supplier was entitled to invoke the sealed container defense, an affirmative defense reserved for only certain types of sellers. Additionally, the economic loss rule barring liability for solely economic losses in a tort claim was inapplicable because KeraLink also sought damages for injury to property, namely, the recovered eye tissue rendered unusable by the contaminated eyewash. We also hold that the district court did not abuse its discretion under Maryland law in awarding the plaintiff prejudgment interest. We therefore affirm the court's award of final judgment for KeraLink against both defendants, jointly and severally, in the amount of $606,415.49 plus prejudgment interest.

I.

Plaintiff KeraLink is a non-profit corporation with its headquarters in Baltimore, Maryland, and operated a network of eye banks in many states. These eye banks recover corneas and other eye tissue from recently deceased donors for future transplant into patients who suffer from corneal blindness or other ocular diseases. Although prohibited

3

by law from selling recovered tissue,[1] KeraLink collects certain fees for reimbursement of costs related to the removal, processing, and transportation of such tissue.

To facilitate the recovery of eye tissue, KeraLink purchased from third party vendors medical equipment and supplies, including "surgical packs" containing "eyewash" used to irrigate the eye tissue. KeraLink purchased the custom-designed surgical packs at issue here from defendant Stradis Healthcare, LLC (Stradis), which has its headquarters in Georgia. KeraLink did not specify any particular brand of eyewash to be included in the surgical packs. Stradis purchased and placed in each pack a bottle of "GeriCare Eye Wash – Sterile Eye Irrigating Solution." Stradis purchased this eyewash from a third-party wholesaler, which received the eyewash from defendant Geri-Care Pharmaceuticals Corporation (Geri-Care).

Geri-Care had purchased the eyewash from Kareway Products, Inc. (Kareway), after requesting that Kareway supply eyewash similar to "Bausch & Lomb Advanced Eye Care." Geri-Care further requested that the Geri-Care logo be placed on the eyewash bottles. Kareway obtained the eyewash from another company that originally manufactured the product in Korea.

Upon receipt of the eyewash from Kareway, Geri-Care did not test the eyewash for pathogens but relied on Kareway's accompanying certification that the contents of each box of bottled eyewash were sterile. Geri-Care registered the eyewash with the United

---

[1] *See* Md. Code, Est. and Trusts, § 4-513 (prohibiting the sale of tissue but permitting a person to "charge a reasonable amount of money for the removal, processing, preservation, quality control, storage, transportation, implantation, or disposal of a part").

States Food and Drug Administration (the FDA). The label on the eyewash bottle displayed Geri-Care's logo and stated that the eyewash was "distributed by" Geri-Care, listing its address in New York, and that the eyewash was a "Product of Korea." There was no other corporate entity or manufacturer identified on the eyewash bottle or on the FDA registration.

When the eyewash bottles arrived in Georgia at Stradis' facility, each bottle was individually sealed. After ensuring that the plastic seal on the cap of each bottle was secure, Stradis placed the eyewash bottles into surgical packs for KeraLink. Stradis included in each surgical pack an insert listing the pack's contents, including the term "sterile eye wash." The insert also included a statement that Stradis had manufactured and distributed the surgical packs.

In October 2017, the Eye Bank Association of America (EBAA) notified KeraLink "about a potentially contaminated" eyewash, namely, a certain lot number of the Geri-Care-brand eyewash. The EBAA instructed eye banks to "pull" this eyewash from their inventory. After hiring a third party to test the eyewash, KeraLink confirmed the presence of contaminants in eight of ten bottles tested, and identified certain lot numbers of Stradis surgical packs containing the potentially contaminated eyewash.

In addition, a surgeon informed KeraLink that the corneas in five of his patients who had received transplants of KeraLink corneal tissue had tested positive for cultures closely related to the pathogens identified in the contaminated eyewash. KeraLink confirmed that it had obtained those five tissues from donors in procedures using the contaminated

5

eyewash. Corneal tissue recovered with use of this contaminated eyewash ultimately occurred in numerous states and the District of Columbia.

KeraLink later filed suit against Stradis and Geri-Care (the defendants) in the United States District Court for the District of Maryland under the court's diversity jurisdiction, 28 U.S.C. § 1332(a)(1). KeraLink alleged claims under Maryland law for strict products liability, breach of implied warranty, and breach of express warranty, seeking damages of more than $600,000.[2] After discovery, the parties filed cross motions for summary judgment. KeraLink argued that Geri-Care and Stradis were jointly and severally liable for damages totaling $606,415.19, based on: (1) a loss of $589,664 in various "service fees" that KeraLink could not collect based on the unusable, damaged tissue; (2) a loss of $354.90 for 182 unusable surgical packs that contained potentially contaminated eyewash, and (3) a loss of $16,396.59 for KeraLink's employees' time spent addressing contamination issues.

The district court granted Geri-Care's motion for summary judgment with regard to KeraLink's claim of breach of express warranty, because Maryland law required privity of contract for this claim and the parties did not have a contractual relationship. KeraLink does not challenge this ruling on appeal.

---

[2] KeraLink also alleged ordinary negligence against Geri-Care, but the district court ruled against KeraLink on that claim. KeraLink does not challenge this ruling on appeal. Also, Stradis filed a third-party complaint against the wholesaler of the eyewash and against Geri-Care. Those claims have been resolved in the district court and are not at issue in this appeal.

The district court granted KeraLink's motion with regard to its remaining claims, awarding summary judgment in KeraLink's favor. The court held Geri-Care and Stradis liable on the strict products liability claim, as well as on KeraLink's alternative claim of breach of implied warranty. Additionally, the court held Stradis liable on the alternative claim of breach of express warranty.[3]

In awarding judgment to KeraLink on the strict products liability claim, the district court rejected Geri-Care's and Stradis' invocation of the "sealed container defense," an affirmative defense available to sellers of defective products under certain conditions. The court held that Geri-Care was not a "seller" of the eyewash because it "held itself out" as a manufacturer of the product. The court also held that Stradis could not assert the defense because it provided an express warranty that the product was sterile, which warranty excluded Stradis from asserting the sealed container defense. The district court also rejected Geri-Care's assertion that the economic loss rule barred liability. The court concluded that the rule was inapplicable because KeraLink did not seek purely economic losses but also sought recovery for injury to property.

The district court entered final judgment awarding KeraLink damages from Stradis and Geri-Care, jointly and severally, in the amount of $606,415.49. The court also awarded prejudgment interest as a matter of right, or, alternatively, in the court's discretion, in the amount of $136,362.24, plus $99.68 per day after September 30, 2021 through the date of

---

[3] As we later explain, given our holding on the strict products liability claim, we need not address KeraLink's alternative warranty theories of liability. *See infra* note 8.

7

judgment.  Geri-Care and Stradis both appealed from the district court's judgment, and we later consolidated their appeals.

## II.

We first consider the arguments raised by Geri-Care and Stradis challenging the court's judgment in favor of KeraLink for strict products liability.  We later address the defendants' contention that the court erred in awarding prejudgment interest.

### A. *Strict Products Liability*

We review de novo the district court's award of summary judgment on KeraLink's claim of strict products liability.  *RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361, 372 (4th Cir. 2021).  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Under Maryland law,[4] a plaintiff can prove strict products liability by showing that: (1) "the product was in [a] defective condition at the time that it left the possession or

---

[4] Geri-Care asserts that the district court erred in applying Maryland law to this claim because under Maryland's choice of law rule, *lex loci delicti*, the last event necessary for strict products liability, namely, damage to the eye tissue, occurred in many different states.  *See DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 807 (4th Cir. 2013).  Thus, Geri-Care asserts that the law of each state where tissue was damaged should apply or, alternatively, that the law of Florida should apply because the greatest amount of tissue damage occurred there.  However, the only pertinent difference between Maryland law and the laws of those other states is that Maryland recognizes an exception to the economic loss rule when a defective product "creates a substantial and unreasonable risk of death or personal injury" (the public safety exception).  *U.S. Gypsum Co. v. Mayor and City Council of Balt.*, 647 A.2d 405, 408 (Md. 1994).  Because we later hold that that the economic loss (Continued)

control of the seller"; (2) the product was "unreasonably dangerous to the user or consumer"; (3) "the defect was a cause of the injuries"; and (4) "the product was expected to and did reach the consumer without substantial change in its condition." *Phipps v. Gen. Motors Corp.*, 363 A.2d 955, 958 (Md. 1976). The defendants do not dispute that KeraLink satisfied the elements of its claim of strict products liability but, instead, challenge the court's judgment imposing liability based on two arguments: (1) the contention of both defendants that the court erred in rejecting their reliance on the sealed container defense; and (2) Geri-Care's assertion that the economic loss rule bars KeraLink from recovering against Geri-Care in this tort claim. We address these arguments in turn.

### 1. Sealed Container Defense

Under Maryland law, a seller of a defective product in certain circumstances can assert an affirmative defense known as the sealed container defense to shield itself from liability for damages and injury caused by that product. Md. Code, Cts. & Jud. Proc. § 5-405(b). In the district court, both Geri-Care and Stradis sought to invoke this defense as sellers of the eyewash, and each argued that the other qualified as a liable manufacturer.

---

rule is not applicable on a different ground, namely, that KeraLink had a property interest in the damaged tissue and, thus, was not seeking recovery of solely economic losses, our analysis does not rely on Maryland's public safety exception and the choice of law issue raised by Geri-Care is immaterial. *Sing Fuels Pte Ltd. v. M/V Lila Shanghai*, 39 F.4th 263, 271-72 (4th Cir. 2022) (explaining that resolution of choice of law issue not required when determination would not alter the disposition of a legal question); *World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co.*, 783 F.3d 507, 514 (4th Cir. 2015) ("[W]e need not resolve the choice-of-law question, as it makes no discernible difference to the relevant analysis.").

9

A "seller," as defined by Maryland law, is a "wholesaler, distributor, retailer, or . . . entity *other than a manufacturer* that is regularly engaged in the selling of a product." *Id.* § 5-405(a)(5)(i) (emphasis added). A seller can successfully invoke the sealed container defense by showing:

> (1) The product was acquired and then sold or leased by the seller in a sealed container or in an unaltered form;
> (2) The seller had no knowledge of the defect;
> (3) The seller in the performance of the duties he performed or while the product was in his possession could not have discovered the defect while exercising reasonable care;
> (4) The seller did not manufacture, produce, design, or designate the specifications for the product which conduct was the proximate and substantial cause of the claimant's injury; and
> (5) The seller did not alter, modify, assemble, or mishandle the product while in the seller's possession in a manner which was the proximate and substantial cause of the claimant's injury.

*Id.* § 405(b). A party qualifies as a "manufacturer" of a product and may not invoke the sealed container defense under Maryland law when that party is "a designer, assembler, fabricator, constructor, compounder, producer, or processor of any product or its component parts," or is "an entity not otherwise a manufacturer that imports a product *or otherwise holds itself out as a manufacturer*." *Id.* § 5-405(a)(2) (emphasis added).

Applying these principles, the district court rejected Geri-Care's argument that it was a mere seller of the eyewash. The court held that Geri-Care qualified as an apparent manufacturer because Geri-Care "held itself out as a manufacturer" by identifying itself, and no other entities, on the label of the eyewash. The court explained that Geri-Care's corporate representative testified that the company intended the public to think that Geri-Care manufactured the eyewash and found that Geri-Care "furthered that goal by" placing

its logo on the eyewash bottle and by registering the eyewash in Geri-Care's name with the FDA. Thus, the court held that Geri-Care was precluded from asserting a sealed container defense.

With regard to Stradis' assertion of the affirmative defense, the district court concluded that, unlike Geri-Care, Stradis was a seller and not a manufacturer of the eyewash. The court nevertheless held that Stradis was not entitled to invoke the sealed container defense because an exception to that defense applied, namely, when a seller makes an express warranty and breaches that warranty, which breach is "the proximate and substantial cause" of the injury. *Id.* § 5-405(c)(6). The district court explained that Stradis made an express warranty that the eyewash was sterile by stating on the list of contents that the pack included "sterile eye wash."

Accordingly, the district court held that neither defendant could avail itself of the sealed container defense to avoid strict products liability. We turn to address each defendant's arguments on this issue.

### a. Geri-Care

Geri-Care argues that the district court erred in concluding that it was not a seller entitled to invoke the sealed container defense. Relying on *Stein v. Pfizer Inc.*, 137 A.3d 279 (Md. Ct. App. 2016), Geri-Care contends that although it was the only entity named on the eyewash packaging, sophisticated purchasers like Stradis and KeraLink would not reasonably assume that Geri-Care was the manufacturer, because Geri-Care was listed on the eyewash bottles only as a "distributor." We disagree with Geri-Care's position.

11

Our review of the record demonstrates that the district court did not err in concluding that Geri-Care held itself out as the eyewash's manufacturer. In Geri-Care's agreement with Kareway, Kareway agreed to provide a private-label eyewash to Geri-Care. Although the eyewash was manufactured in Korea at the direction of Kareway, the agreement required the eyewash to carry Geri-Care's logo. Geri-Care provided Kareway with the logo and reviewed and made changes to the label. Further, Geri-Care named itself, and no other company, as the eyewash's distributor on the label and as the registrant to the FDA. By placing its logo on the eyewash bottle and by registering the eyewash in Geri-Care's name with the FDA, Geri-Care intended the public to think that Geri-Care manufactured the eyewash. As the district court held, "[t]here was no way for a purchaser of the eyewash to know that Geri-Care was not the manufacturer."

Our conclusion is not altered by Geri-Care's reliance on *Stein v. Pfizer Inc.*, 137 A.3d 279, and Geri-Care's argument that Stradis and KeraLink were "sophisticated users." In *Stein*, the question presented was whether a "parent company" of a corporation that manufactured and sold a cement product containing asbestos was an "apparent manufacturer" and subject to a strict products liability claim. The Maryland court explained that the proper inquiry was not whether a casual observer reasonably could think that the parent company was the manufacturer, but what a "reasonable purchaser of refractory materials," a non-consumer product, would think. *Id.* at 296. The court held that a steel company, which had purchased the product directly from the manufacturing corporation both before and after the parent company's acquisition, knew that the parent

12

company was not a manufacturer even though both companies' logos appeared on marketing materials and invoices. *Id.* at 281-82, 297.

In contrast, here, there is no basis on which a purchaser, sophisticated or otherwise, could determine from the eyewash bottle and packaging that another entity was a manufacturer of the eyewash. Only Geri-Care's name and logo appeared on the eyewash bottle and packaging, and only Geri-Care registered the product with the FDA. Although Geri-Care identified itself as a "distributor" and not as a "manufacturer," a jury could not conclude on this record that purchasers of the eyewash reasonably would have known that Geri-Care was not the eyewash manufacturer. We therefore conclude that the district court properly held that Geri-Care, as an apparent manufacturer, was not entitled to assert Maryland's sealed container defense to avoid strict products liability.

### b. Stradis

As it argued in the district court, Stradis again asserts on appeal that it did not make an express warranty to KeraLink about the eyewash's sterility and that, therefore, Stradis was entitled to rely on the sealed container defense. Stradis contends that by including the eyewash in the surgical pack and listing "sterile eye wash" as an item contained in the pack, Stradis merely repeated Geri-Care's warranty that the eyewash was sterile. We disagree with Stradis' argument.

To establish a breach of express warranty under Maryland law, a plaintiff must show that: "1) a warranty existed; 2) the product did not conform to the warranty; and 3) the breach proximately caused the injury or damage." *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 223 (4th Cir. 2009) (applying Maryland law). "Any description of the goods

13

which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Md. Code, Com. Law § 2-313(1)(b). "[A]ffirmations of fact" appearing on a product's label or on a "package insert" can constitute express warranties. *See Rite Aid Corp. v. Levy-Gray*, 894 A.2d 563, 612-13, 623-25 (Md. 2006) (explaining that a statement on package insert that a prescription drug could be taken with food or milk formed the basis for a claim of express warranty).

As the district court explained, Stradis included on the surgical pack the description "STERILE: Unless Open or damaged" and chose to place a representation on the insert that the pack contained "sterile eye wash." These descriptions plainly were made by Stradis and were made separately from Geri-Care's statement on the eyewash bottles that the contents were sterile. Critically, Stradis has not cited, nor have we identified, any authority holding that a party who "passes on" another company's warranty through its own, separate representation has not made an express warranty. And finally, the record shows that Stradis advertised itself as having "expertise in eye banking and corneal transplantation," and was aware that KeraLink needed a sterile eyewash for its tissue recovery. Thus, Stradis' representation that the eyewash was sterile was made with knowledge that this protection was critical to KeraLink's intended use of the product. *See* Md. Code, Com. Law § 2-313(1)(b).

14

We therefore hold that the Stradis made an express warranty that the eyewash was sterile.[5]    Accordingly, under Maryland Code, Cts. & Jud. Proc. § 5-405(c)(6), which precludes sellers who breach express warranties from relying on the sealed container defense, Stradis was barred from asserting the defense.

## 2.    Economic Loss Rule

Under Maryland law, a plaintiff asserting a strict products liability claim generally may recover damages for three categories of losses: (1) personal injury, (2) physical harm to property other than the defective product, and (3) economic loss suffered because the product fails to meet a buyer's expectations. *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 631 (Md. 1995); *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 265 (Md. 2007) (describing the second category as "physical harm to tangible things" (citation omitted)). Under the "economic loss rule," however, a plaintiff is barred from recovering in tort when the claimed damages are solely grounded on economic loss. *A.J. Decoster Co. v. Westinghouse Elec. Corp.*, 634 A.2d 1330, 1332, 1336-37 (Md. 1994); *see* Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 605 (2d. ed. July 2022 Update) (describing "stand-alone economic harms or losses" as costs to a plaintiff not arising from personal injury or "damage to tangible property"). "Economic losses include such things as the loss of value or use of the product itself, the cost to repair or replace the product, or the lost profits resulting from the loss of use of the product." *A.J. Decoster*, 634 A.2d at

---

[5] Stradis does not challenge the district court's determination that it breached an express warranty or that the breach resulted in the damages as asserted by KeraLink.

15

1332 (holding that the death of chickens, caused by a defective switch for a power source, qualified as damage to tangible personal property and was not barred by the economic loss rule).

The purpose of the rule is to preserve the distinction between tort claims, like the strict products liability claim here, and contract claims. *See E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866-70 (1986). A defendant typically is not held responsible in tort for purely economic losses that more properly are addressed in a contract claim. *A.J. Decoster*, 634 A.2d at 1332. But a defendant in a tort action may be liable for physical injuries or property damage caused by a defective product based on the defendant's duty to avoid reasonably foreseeable harm. *Id.* Thus, in a strict products liability tort claim, the economic loss rule does not bar recovery of economic losses resulting from damage to "other property" caused by the defective product.[6] *Id.* at 1336-37; *Morris*, 667 A.2d at 631; Dobbs, Hayden & Bublick, *supra* § 449.

In the district court, KeraLink sought recovery in strict products liability for lost service fees relating to the damaged tissue, the cost to replace the unusable eyewash, and lost employee time. Geri-Care argued, as it does on appeal, that the fees relating to the damaged tissue were pure economic losses barred by the economic loss rule. Geri-Care

---

[6] *See supra* note 4 (discussing an exception to the economic loss rule under Maryland law).

16

further contended that KeraLink did not seek damages related to injury to other property, because the eye tissue was not KeraLink's property.[7]

The district court disagreed with Geri-Care and held that KeraLink's claim was not barred by the economic loss rule. The court held that KeraLink had property interests in the tissue that were impaired by the contaminated eyewash. Relying on the definition of property as encompassing "real, personal, mixed, tangible or intangible property of every kind," Md. Rule 1-202(v), the district court held that the eye tissue was tangible property and that KeraLink had property rights, though limited, in the tissue. Acknowledging that under the Maryland Revised Uniform Anatomical Gift Act (the Act), Md. Code, Est. and Trusts, § 4-513, KeraLink could not sell the tissue, the court nevertheless observed that the Act permitted KeraLink to charge fees for the services rendered to remove, store, and transfer the tissue, *see id.* § 4-513(b). Thus, the court held that KeraLink maintained limited property rights in the tissue and was seeking recovery for damage to this property in the form of lost service fees. Accordingly, the court concluded that the economic loss rule was not applicable because KeraLink had sought damages based on the injury to property in which KeraLink had limited property rights.

Geri-Care, however, argues on appeal that Maryland courts have not addressed whether a party can have a property right in human tissue, and that concluding that an entity

---

[7] In framing its economic loss rule challenge, Geri-Care does not address the other damages sought by KeraLink for employee time expended and the cost to replace the unusable eyewash. Based on our conclusion that KeraLink sought damages for harm to other property, we need not separately analyze these other sources of damages.

can own tissue presents "profound philosophical concerns." Thus, Geri-Care contends that because, under the Act, KeraLink cannot sell the tissue and must dispose of unused tissue, KeraLink does not have dominion over the tissue "in total exclusion" of others' rights. Accordingly, Geri-Care contends that KeraLink did "not have a property right" in the contaminated eye tissue, and that the economic loss rule barred recovery for KeraLink's strict products liability claim. We disagree with Geri-Care's position.

At the outset, we observe that enforcement of the economic loss rule seeks to ensure that damages sought in a tort claim are based on a cognizable injury. *See Lloyd*, 916 A.2d at 265. Application of this rule is not intended to delineate the full contours of a party's property rights in other contexts, and does not require a conclusion that a party has full ownership rights to the property. *See* Dobbs, Hayden & Bublick, *supra* § 605 (explaining that damage to tangible property in the economic loss context must occur to property "in which the plaintiff has a legally recognized possessory or ownership interest").

The record demonstrates that KeraLink had possessory rights to the donated tissue as permitted by the Act, having been given the required consent of the donors or legal next of kin. KeraLink had a right to remove, store, and implant the tissue in accordance with the restrictions outlined in the Act. Although the Act prohibits parties from selling tissue and prescribes how parties must dispose of donated, unused tissue, these limitations imposed by statute did not eliminate KeraLink's possessory interests in the tissue and its right to recover, store, and transfer the tissue for transplant.

As demonstrated by the record, the contaminated eyewash rendered certain recovered eye tissue unusable. The physical damage to this "tangible thing," over which

18

KeraLink had dominion and rights of use, formed the basis for KeraLink to recover damages. *See* Dobbs, Hayden & Bublick, *supra* §§ 449, 605. Because KeraLink had a limited but sufficient property interest in the tissue, the economic loss rule did not bar recovery for the challenged damages sought by KeraLink in its strict products liability claim.

\*    \*    \*

Because we agree with the district court's determination that neither the sealed container defense nor the economic loss rule is applicable in this case, we affirm the district court's award of summary judgment in favor of KeraLink on its strict products liability claim against Geri-Care and Stradis. Apart from the failed defenses discussed above, neither defendant has argued that KeraLink did not establish the elements of its strict products liability claim. Thus, based on the record before us, we conclude that the court did not err in awarding KeraLink damages of $606,415.49, jointly and severally against both defendants.[8]

---

[8] Given this conclusion, we need not address Geri-Care's and Stradis' arguments challenging the district court's judgment (1) holding both of them liable for breach of implied warranty, or (2) holding Stradis liable for breach of express warranty. These claims represented alternative theories of liability for the same damages to which KeraLink is entitled under its strict products liability claim. *See U.S. Gypsum Co.*, 647 A.3d at 408 (describing claims of strict products liability and breach of implied and express warranties as "alternative theories"); *see also Best v. Cyrus*, 310 F.3d 932, 936 (6th Cir. 2002) (declining to address on appeal an alternative theory of liability after holding the defendant liable on another theory); *Craig Outdoor Advert. Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1022 (8th Cir. 2008) (explaining that when a party asserts alternative theories of recovery for the same injury, the party is entitled only to a single award of compensatory damages).

19

*B. Prejudgment Interest*

Finally, we address Geri-Care's and Stradis' joint argument that the district court erred in awarding prejudgment interest against both defendants. We observe at the outset that the defendants do not challenge the district court's application of Maryland law to this issue. *See Bilancia v. Gen. Motors Corp.*, 538 F.2d 621, 623 (4th Cir. 1976) (explaining that failure to assert that another jurisdiction's law applied resulted in forfeiture of that argument); *see also Parkway 1046, LLC v U.S. Home Corp.*, 961 F.3d 301, 306 (4th Cir. 2020) (applying Maryland law to the award of prejudgment interest in a case invoking the court's diversity jurisdiction).

Applying Maryland law, the district court held that the value of the unusable tissue, unusable surgical packs, and lost employee time was "readily ascertainable." And the court observed that the amount of damages sought by KeraLink was consistent throughout the litigation. The court held that "[w]hether as a matter of right, or in the court's discretion," KeraLink was entitled to prejudgment interest to fully compensate its known and certain losses. The court further observed that KeraLink attempted to resolve the case at an early stage and bore no responsibility for the excessive filings by the defendants, principally by Geri-Care. Thus, the court entered a joint and several award of prejudgment interest against both defendants and in favor of KeraLink in the amount of $136,362.24, plus $99.68 per day after September 30, 2021 through the date of judgment.

Geri-Care and Stradis argue that the district court's award of prejudgment interest as a matter of right was error under Maryland law because both liability and any degree of

20

liability were not certain. The defendants similarly argue that the district court erred in its alternative ruling, awarding prejudgment interest under its discretionary authority.

We will assume, without deciding, that the district court erred in awarding prejudgment interest as a matter of right, but nevertheless affirm the award under the court's discretionary authority. The purpose of prejudgment interest is to compensate a prevailing party for the loss of a liquidated amount due and the income that the prevailing party could have derived from the use of those funds. *Selective Way Ins. Co. v. Nationwide Prop. & Cas. Ins. Co.*, 219 A.3d 20, 52 (Md. Ct. Spec. App. 2019). Under Maryland law, prejudgment interest

> is allowable as a matter of right when the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date.

*Ver Brycke v. Ver Brycke, III*, 843 A.2d 758, 777-78 (Md. 2004) (citation and internal quotation marks omitted). However, when there is "a legitimate dispute as to the obligation to pay," a claimant no longer has "an absolute right to interest" and the decision whether to award such interest rests within the discretion of the factfinder. *Gordon v. Posner*, 790 A.2d 675, 698 (Md. App. 2002); *see also Ver Brycke*, 843 A.2d at 777 (explaining that "[w]hether a party is entitled to pre-judgment interest generally is left to the discretion of the fact finder" (citation omitted)).

To show that a district court abused its discretion in awarding prejudgment interest, a defendant must establish that "according to the equity and justice appearing between the parties on a consideration of all the circumstances of the particular case," the district court

21

"worked an injustice" to the defendant. *I. W. Berman Props. v. Porter Bros., Inc.*, 344 A.2d 65, 76 (Md. 1975). An appellate court will not disturb such a discretionary judgment of a trial court "unless there is grave reason for doing so." *Id.*

Our review of the record reveals no injustice or serious fault in the court's discretionary decision to award prejudgment interest. The court held the defendants liable as a matter of law after rejecting their asserted defenses to KeraLink's claim of strict products liability. As explained above, we easily affirm that ruling. Moreover, the defendants do not dispute the amount of damages calculated by the court or the court's finding that the defendants partly were responsible for prolonging the proceedings in the district court. Thus, on this record, we conclude that the district court did not abuse its discretion in awarding prejudgment interest.

### III.

For these reasons, we affirm the district court's award of summary judgment against both defendants in favor of KeraLink, and the court's discretionary award of prejudgment interest.

*AFFIRMED*