**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1181**

---

KERALINK INTERNATIONAL, INC.,

> Plaintiff,

v.

STRADIS HEALTHCARE, LLC,

> Defendant and Third-Party Plaintiff – Appellee,

v.

GERI-CARE PHARMACEUTICALS CORPORATION,

> Third-Party Defendant – Appellant,

and

INSOURCE, INC.; KAREWAY PRODUCT, INC.,

> Third-Party Defendants.

---

**No. 23-1246**

---

KERALINK INTERNATIONAL, INC.,

> Plaintiff,

v.

STRADIS HEALTHCARE, LLC,

Defendant and 3rd-Party Plaintiff – Appellant,

v.

GERI-CARE PHARMACEUTICALS CORPORATION,

Third Party Defendant – Appellee,
and

INSOURCE, INC.; KAREWAY PRODUCT, INC.,

Defendants.

───────────────

Appeal from the United States District Court for the District of Maryland, at Baltimore. Catherine C. Blake, Senior District Judge.  (1:18-cv-02013-CCB)

───────────────

Argued:  May 6, 2025                                      Decided:  July 16, 2025

───────────────

Before HARRIS and QUATTLEBAUM, Circuit Judges, and KEENAN, Senior Circuit Judge.

───────────────

Affirmed by published opinion.  Senior Judge Keenan wrote the opinion, in which Judge Harris and Judge Quattlebaum agreed.

───────────────

Danielle D. Giroux, HARMAN CLAYTOR CORRIGAN & WELLMAN, Glen Allen, Virginia, for Appellant/Cross-Appellee.  Kelly Marie Lippincott, GORDON REES SCULLY MANSUKHANI, LLP, Alexandria, Virginia, for Appellee/Cross-Appellant.

───────────────

2

BARBARA MILANO KEENAN, Senior Circuit Judge:

In this appeal, we consider whether the district court erred (1) in awarding summary judgment to Stradis Health Care, LLC (Stradis) on its claim of implied indemnification against a joint tortfeasor, Geri-Care Pharmaceuticals Corporation (Geri-Care), and (2) in denying Stradis' request that Geri-Care be ordered to pay Stradis' attorneys' fees. In a prior appeal involving these parties, we affirmed the district court's judgment in favor of plaintiff KeraLink International, Inc. (KeraLink), the operator of a national network of "eyebanks," on its strict products liability claim against Stradis and Geri-Care, two suppliers of contaminated eyewash used to remove donated eye tissue for future transplant. *KeraLink Int'l v. Geri-Care Pharm.*, 60 F.4th 175 (4th Cir. 2023). Stradis and Geri-Care were held jointly and severally liable for the judgment amount of $606,415.49 plus prejudgment interest.

Upon our review, we hold that the district court did not err under Maryland law in awarding Stradis implied indemnification against Geri-Care for the products liability judgment, based on the court's conclusion that Stradis' culpability in distribution of the contaminated eyewash product was secondary to Geri-Care's primary culpability as the apparent manufacturer of the product. We also conclude that the district court did not err or abuse its discretion under Maryland law in denying Stradis' claim for attorneys' fees based on the court's application of the "American Rule," which ordinarily precludes the recovery of attorneys' fees as compensatory damages unless authorized by statute, rule, or contract. We therefore affirm the district court's judgment.

3

I.

We state the relevant facts as set forth in our prior decision. *Id.* KeraLink, which maintains its business headquarters in Maryland, operates a network of eyebanks in many states and collects corneas and donated eye tissue for future transplants. KeraLink purchased from Stradis a number of "surgical packs" containing "eyewash," among other products. Stradis had purchased this eyewash from a third party, which had bought the eyewash from Geri-Care. Geri-Care, in turn, had procured the eyewash from Kareway Product, Inc. (Kareway), which had obtained the eyewash from a Korean manufacturing company.

After receiving the eyewash from Kareway, Geri-Care did not test the eyewash for pathogens but relied on Kareway's certification that the contents of each box of bottled eyewash were sterile. Geri-Care registered the eyewash with the Food & Drug Administration (FDA) and inspected the bottles' seals and expiration dates. The label on each eyewash bottle displayed Geri-Care's logo, stated that the bottle was "distributed by" Geri-Care, and that the eyewash was a "Product of Korea." Geri-Care listed no other entities on the eyewash labeling.

Before Geri-Care marketed the product, Geri-Care requested that Kareway make changes to the label, including changes to the directions for use, changes to the expiration dates, and the addition of a statement asserting that the contents were comparable to another named brand of eyewash. The Geri-Care eyewash label stated that the eyewash was a "STERILE EYE IRRIGATING SOLUTION."

4

When the eyewash arrived at Stradis' facility in Georgia, each bottle already had been individually sealed. After ensuring that the plastic seal on the cap of each bottle was secure, Stradis placed the eyewash bottles into surgical packs that also contained other items. Stradis included in each surgical pack sent to KeraLink an insert listing the pack's contents, including "sterile eye wash." The insert also contained a statement that Stradis had manufactured and distributed the surgical packs.

The Eye Bank Association of America later notified KeraLink about potentially contaminated eyewash. KeraLink confirmed the presence of contaminants in eight of ten bottles tested and identified certain lot numbers of Stradis' surgical packs containing the potentially contaminated eyewash. Corneal tissue recovered with this contaminated eyewash was rendered unusable. The record showed that testing conducted by Stradis and Geri-Care after the reports of contamination confirmed that the eyewash was contaminated when it left Geri-Care's and Stradis' possession.

KeraLink filed suit against Stradis and Geri-Care in the trial court asserting claims for strict products liability and other claims. Stradis filed a third-party complaint against Geri-Care and other entities not involved in this appeal. As relevant here, the district court initially awarded summary judgment to KeraLink on its strict products liability claim against both Geri-Care and Stradis.[1]

---

[1] KeraLink alleged additional claims against Stradis and Geri-Care. Those claims are not relevant to this appeal. *See KeraLink*, 60 F.4th at 180 nn.2 & 3.

Neither Stradis nor Geri-Care disputed that KeraLink could prove the elements for a strict products liability claim, but both parties sought to avoid liability by asserting a "sealed container defense."[2] *See id.* at 181 (setting forth elements of strict products liability under Maryland law: (1) "the product was in [a] defective condition at the time that it left the possession or control of the seller"; (2) the product was "unreasonably dangerous to the user or consumer"; (3) "the defect was a cause of the injuries"; and (4) "the product was expected to and did reach the consumer without substantial change in its condition" (quoting *Phipps v. Gen. Motors Corp.*, 363 A.2d 955, 958 (Md. 1976))).  The district court rejected Stradis' and Geri-Care's affirmative defenses and entered "final judgment" on KeraLink's claims against Stradis and Geri-Care under Federal Rule of Civil Procedure 54(b), thus permitting Stradis and Geri-Care to appeal to this Court.  In its judgment, the district court held that Stradis and Geri-Care were jointly and severally liable to pay KeraLink $606,415.49, plus prejudgment interest.  Notably, KeraLink did not seek and was not awarded any attorneys' fees from Stradis or Geri-Care.

On appeal, we affirmed this part of the district court's judgment. *Id.* at 188.  In our analysis, we agreed with the district court that Geri-Care was barred under Maryland Code, Cts. & Jud. Proc. § 5-405(b) from asserting a "sealed container defense" to the products liability claim, because Geri-Care had held "itself out as a manufacturer." *Id.* at 182-83.  We explained that there was no basis on which a purchaser, sophisticated or otherwise,

---

[2] Geri-Care also asserted an affirmative defense based on the "economic loss rule." We affirmed the district court's analysis that Geri-Care was not entitled to rely on this rule. *Id.* at 184-86.

could determine from the eyewash bottle and packaging that another entity was a manufacturer of the eyewash. *Id.* at 183. Only Geri-Care's name and logo appeared on the eyewash bottle and packaging, and only Geri-Care registered the product with the FDA. *Id.* Although Geri-Care identified itself as a "distributor" and not as a "manufacturer," we concluded that a reasonable jury would determine that Geri-Care was the apparent manufacturer of the eyewash. *Id.*

With regard to Stradis, we agreed with the district court that Stradis was a "seller" of the eyewash and not a "manufacturer." *Id.* at 182. Nevertheless, we concluded that Stradis was not entitled to invoke the sealed container defense based on a separate exception in Maryland Code, Cts. & Jud. Proc. § 5-405(c)(6). *Id.* at 182-84. Under that provision, when a seller makes an express warranty and breaches that warranty, causing the injury, that seller is not permitted to invoke a sealed container defense. Md. Code § 5-405(c)(6). We agreed with the district court that Stradis made an "express warranty" that the eyewash was sterile, and that Stradis' breach of its express warranty barred Stradis from asserting a "sealed container defense" to the products liability claim. *KeraLink*, 60 F.4th at 183-84. After addressing certain other issues presented on appeal, we affirmed the court's award of summary judgment to KeraLink on its products liability claim. *Id.* at 188.

The remaining part of the case proceeded in the district court, including the court's consideration of Stradis' third-party complaint seeking indemnification from Geri-Care.[3]

---

[3] Stradis asserted additional claims against Geri-Care, but those claims are not relevant to this appeal.

7

In support of its request for implied indemnification in tort, Stradis alleged that its liability to KeraLink was "secondary, passive, technical, or imputed," while Geri-Care's liability was "primary, active, and direct." So, Stradis alleged that Geri-Care should bear full responsibility for the money judgment jointly and severally owed to KeraLink by the two tortfeasors.

The district court agreed with Stradis, granting its motion for summary judgment, and later denying Geri-Care's motion to reconsider. But the court denied Stradis' request to recover from Geri-Care attorneys' fees[4] incurred in Stradis' defense of KeraLink's products liability action, and the court later denied Stradis' motion to reconsider that ruling.

Geri-Care now appeals the district court's ruling that Geri-Care must indemnify Stradis. And Stradis appeals the court's ruling denying its claim for attorneys' fees. We address these challenges in turn.

## II.

We review de novo the district court's award of summary judgment in favor of Stradis. *RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361, 372 (4th Cir. 2021). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the court's denial of Stradis' request for attorneys' fees under an

---

[4] For ease of reference, we refer to this request as one for attorneys' fees, even though Stradis also sought recovery of costs.

abuse-of-discretion standard. *Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 675 (4th Cir. 2015) (citation omitted) (*Southpeak*). Applying this standard, we will reverse the district court only if the court was "clearly wrong" or "committed an error of law." *Id.* (quoting *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013)).

The district court asserted its diversity jurisdiction over this case under 28 U.S.C. § 1332 and applied Maryland law when considering Stradis' claim for indemnification and its request for attorneys' fees. We agree with the court's decision to apply Maryland law, which decision the parties do not challenge, because the issues presented are related to KeraLink's money judgment awarded under Maryland law on its products liability claim.

### A.

We first address Geri-Care's argument that the district court erred in awarding Stradis implied indemnification on the strict products liability judgment. Geri-Care contends that Stradis' culpability was not significantly different from Geri-Care's culpability in the case, thereby barring implied indemnification. Geri-Care asserts that like Geri-Care, Stradis received the eyewash in sealed containers, failed to test the containers' contents, and passed the containers on to others while representing that they contained sterile eyewash. According to Geri-Care, its status as an "apparent manufacturer," which barred its prior assertion of a sealed container defense, is not relevant to the inquiry whether Geri-Care should be required to indemnify Stradis, a "non-innocent bystander in the distribution chain of the eyewash." We disagree with Geri-Care's position.

Under Maryland law, indemnification can arise by express contractual agreement, by implication in fact based on the parties' special relationship, or by implication in law.

9

*Pulte Home Corp. v. Parex, Inc.*, 942 A.2d 722, 731-32 (Md. 2008) (citing *Franklin v. Morrison*, 711 A.2d 177, 182 (Md. 1998)).  Stradis sought indemnity based on the third category, which in the context of an underlying tort claim is referred to as "tort indemnity." *Id.* (citing *Franklin*, 711 A.2d at 182).

Critically, Maryland does not require that a party seeking tort indemnity be wholly innocent or free from negligent conduct to state a claim.  Instead, Maryland permits one joint tortfeasor to seek implied indemnity against another joint tortfeasor that is primarily culpable, provided that the party seeking indemnification is only secondarily culpable. *Max's of Camden Yards v. A.C. Beverage*, 913 A.2d 654, 660 (Md. Ct. Spec. App. 2006); *Bd. of Trs. of Balt. Cnty. Cmty. Colls. v. RTKL Assocs.*, 559 A.2d 805, 810-11 (Md. Ct. Spec. App. 1989); *see Jennings v. United States*, 374 F.2d 983, 987 n.7 (4th Cir. 1967) (applying Maryland law).

Maryland's highest court has explained that "[i]t is extremely difficult to state any general rule or principle as to when indemnity will be allowed and when it will not." *Franklin*, 711 A.2d at 183 (quoting W.P. Keeton et al., *Prosser and Keeton on the Law of Torts* § 51, at 343-44 (5th ed. 1984)).  Maryland law recognizes that tort indemnity is not subject to any "one explanation" because equitable principles are at the heart of implied indemnity claims.  *Id.* at 183 (citation omitted).  Therefore, Maryland courts have not articulated generally applicable standards for determining what types of conduct distinguish "primary and secondary" culpability, terms that Maryland has used interchangeably with the terms "active and passive" negligence.

10

But Maryland courts have emphasized that tort indemnity may be awarded to prevent the tortfeasor who should carry the burden of liability for an injury from being "unjustly enriched" if a less culpable tortfeasor is required to discharge that liability. *Pulte Home Corp.*, 942 A.2d at 731 (citation omitted); *Franklin*, 711 A.2d at 183 (citing Restatement (Second) of Torts § 886B (Am. Law Inst. 1979)). And, despite the absence of generally applicable standards for considering a request for tort indemnity, Maryland's highest court has emphasized that before a court may award indemnity to a less culpable tortfeasor, there must be a disparity in the nature or the extent of fault between the joint tortfeasors. *See Franklin*, 711 A.2d at 183 (explaining that tort indemnity can rest on a difference in character of the duties owed by the two parties to the injured plaintiff); *see also id.* at 180-83 (driver of car that stalled on road and contributed to death of plaintiff who ran into stalled car could not seek indemnification from mechanic who contributed to car's stall because both driver and mechanic were actively negligent); *Gardenvillage Realty Corp. v. Russo*, 366 A.2d 101 (Md. Ct. Spec. App. 1976) (tenant was injured after a porch concrete slab collapsed on her; any negligence by the owner and general contractor of the residence was passive, while the supplier who built the slab was actively negligent and was required to indemnify).

One "frequently occurring" instance in which "a right to implied indemnification has been recognized between tortfeasors" is when one tortfeasor fails to discover a defect in an item that has been supplied by another tortfeasor. *Max's of Camden Yards*, 913 A.2d at 659. In the present case, Stradis was exposed to strict products liability by its use of

11

Geri-Care's product in Stradis' surgical packs and by Stradis' acceptance of Geri-Care's representation that its product was sterile.

Although Stradis also expressly stated that the eyewash was sterile, this representation was not the reason for Stradis' responsibility on the strict products liability claim. As we already have observed, in strict products liability, parties in any portion of the chain of distribution, including manufacturers, distributors, and sellers generally may be held liable for injuries caused by a defective product, regardless of the degree or nature of their fault. *See Phipps*, 363 A.2d at 957.

No decisions from courts in Maryland directly address tort indemnity in the context of joint tortfeasors held liable for strict products liability. But Maryland's intermediate appellate court has suggested that implied indemnity is available in some cases as a remedy between joint tortfeasors held strictly liable for distribution of the same defective product. *See Max's of Camden Yards*, 913 A.2d at 659-60 (discussing general applications of implied indemnity); *see also* Restatement (Second) of Torts § 886B(2)(d).

We do not find any basis in Maryland law for excluding the availability of tort indemnification in cases of strict products liability. Cases in Maryland involving common law strict products liability, like cases alleging common law negligence, will have instances in which more than one tortfeasor will be held liable for the plaintiff's injury and the degree of the different tortfeasors' culpability may materially differ. In fact, as a practical matter, there likely will be more instances in the liability chain in a products case than in a simple negligence case in which the utility of, or need for, implied indemnity will be manifest. And the principles of Maryland's law of tort indemnity, which differentiate primary

12

culpability from secondary or passive culpability, can be applied with equal facility to both causes of action. So, while Maryland's courts have not directly addressed whether tort indemnity applies in a strict products liability action to indemnify a party who incorporates a defective product obtained from an upstream actual or apparent manufacturer into their own product, we conclude that Maryland law permits such indemnification as allowed by the trial court in this case. *See BP Prods. N.A. v. Stanley*, 669 F.3d 184, 188 (4th Cir. 2012) (explaining that when a federal court asserts diversity jurisdiction, it applies the governing state law or, when necessary, predicts how the state's highest court would rule on an unanswered question).

As noted above, KeraLink invoked a claim of strict products liability against Stradis based on its sale of Geri-Care's contaminated eyewash. Courts have described this type of conduct as being passively or secondarily negligent or culpable and have applied indemnity principles against the product manufacturer. *See Pyramid Condo Ass'n v. Morgan*, 606 F. Supp. 592, 596 (D. Md. 1985) (right to indemnity exists "where the indemnitee's negligence is based upon a failure to inspect and thereby discover a defect in an article manufactured by the indemnitor" (quoting *Jennings*, 374 F.2d at 987 n.7)). Here, the trial court's award of tort indemnification in favor of downstream distributor Stradis and against the apparent manufacturer of the defective product, Geri-Care, protected Stradis from exposure to payment of the entire judgment based on its joint and several liability.

After considering the record before us, we hold that the trial court did not err in concluding that Stradis should be awarded tort indemnification against Geri-Care. At the outset, we recognize that neither party actually manufactured the eyewash nor tested the

13

eyewash for sterility before its use.  Likewise, both parties incorrectly represented that the eyewash was sterile.  If these were the only relevant facts, we would agree that, as a matter of law, Stradis and Geri-Care were equally culpable and that Stradis was not entitled to indemnification.  But the full factual record demonstrates that Geri-Care's culpable conduct was more extensive and of a different nature than Stradis' culpable conduct.  And on this record, a jury could not reasonably reach a different conclusion.  *See RXD Media*, 986 F.3d at 375.

As the record shows, Geri-Care entered into an agreement with Kareway to become the exclusive seller of that eyewash, which was a pre-existing product created by a company in South Korea.  Geri-Care provided Kareway with information to place on the eyewash bottle, which included Geri-Care's corporate address in New York, its logo, and the statement that the eyewash was distributed by Geri-Care; no other entity's name appears on the eyewash packaging.  Geri-Care also reviewed the label for "accuracy" and made changes, including to the "Drug Facts" section of the label.  Further, Geri-Care registered the eyewash with the FDA, listing no other entities as being affiliated with the eyewash.

After obtaining the Geri-Care-branded eyewash from Kareway, Geri-Care sold the product to a third party and ultimately the eyewash was sold to Stradis.  Stradis, a downstream supplier, placed the contaminated eyewash into its surgical packs and sold those packs to KeraLink.  So, Geri-Care, which had taken numerous steps to be the exclusive seller of its branded eyewash, set in motion the downstream distribution of its eyewash.  That eyewash ultimately reached Stradis, which placed the contaminated Geri-

14

Care branded eyewash in surgical packs for distribution to KeraLink. Although Stradis placed its own warranty of sterility on its product, that fact did not alter the relative culpabilities of the two joint tortfeasors held liable for strict products liability.[5] Stradis remained the downstream distributor of the defective product apparently manufactured and warranted by Geri-Care, and continued to be secondarily culpable in both degree and kind to Geri-Care's primary culpability in placing its branded eyewash in the stream of commerce. *See Franklin*, 711 A.2d at 183.

Moreover, if we were to accept Geri-Care's view that it and Stradis were equally culpable, then only the actual manufacturer of the eyewash could be subject to tort indemnification in favor of a downstream supplier. We have not found any Maryland law to support such an assertion. Based on the facts presented, Stradis' culpability was properly viewed by the trial court as being secondary to that of Geri-Care as a matter of law. The trial court's conclusion also was consistent with the equitable nature of the remedy of implied indemnity under Maryland law, ensuring that Geri-Care was not "unjustly enriched" by Stradis' exposure to payment of the entire judgment despite Geri-Care's primary culpability. *See id.*

For these reasons, we conclude that the district court did not err in awarding summary judgment to Stradis on its implied indemnification claim.

---

[5] The district court also awarded judgment to KeraLink on its claims against Stradis for breach of both express and implied warranty and on KeraLink's claim against Geri-Care for breach of implied warranty. *KeraLink*, 60 F.4th at 186 n.8. But as we explained in reviewing the prior appeal, these claims were alternative theories of liability for the same damages to which KeraLink was entitled under its strict products liability claim. *Id.*

15

B.

We next consider whether the district court abused its discretion in declining to include in Stradis' indemnity award the sum of $220,950 in attorneys' fees associated with Stradis' defense in the KeraLink suit. Before we address Stradis' arguments, we set forth the district court's analysis.

The district court began by explaining that Maryland follows the "American Rule," which bars a prevailing party from recovering attorneys' fees as part of compensatory damages unless authorized by statute, rule, or contract. *See Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 735 A.2d 1081, 1094 (Md. 1999). In fact, the district court's award of summary judgment in favor of KeraLink against Stradis and Geri-Care did not include any amount of attorneys' fees.

The district court addressed application of the American Rule in the context of Stradis defending against KeraLink's claims. In its analysis, the district court relied on the decision of Maryland's intermediate appellate court in *Max's of Camden Yards v. A.C. Beverage*, 913 A.2d 654 (Md. Ct. Spec. App. 2006). In *Max's*, Chad Burger and others became ill after consuming tainted beer at "Max's of Camden Yards" (the bar). 913 A.2d at 658. Burger sued both the bar and the company responsible for inspecting and cleaning the bar's "beer lines" (the company), asserting various theories of negligence. *Id.* at 661-62. After Burger entered into a settlement agreement with the company releasing both defendants and Burger's complaint was dismissed, the bar sued the company seeking indemnification for the bar's attorneys' fees and costs expended in defending Burger's suit.

16

*Id.* at 658.  The bar asserted that the company had been actively negligent, while the bar had engaged only in passive negligence.  *Id.* at 659.

The Maryland court explained that an exception to the American Rule arises "when an *innocent* party is forced into litigation with a third party by the wrongful conduct of another, the *innocent* party can recover fees" incurred in defending itself.  *Id.* at 660 (emphasis added) (citing *Chang v. Brethren Mut. Ins. Co.*, 897 A.2d 854, 864 (Md. Ct. Spec. App. 2006)).  But the court observed that this exception may be limited to circumstances in which a party has both a duty to defend and to indemnify and that, generally, a tortfeasor does not have a duty to defend another tortfeasor.  *Id.* at 660-61.  The Maryland court also stated, in dictum, that "[i]t is very doubtful" that Maryland law permits a tort indemnitee to recover attorneys' fees in a case involving an "active-passive [culpability] distinction."  *Id.* at 661.  But the court did not need to reach that question in *Max's* because it concluded that, as alleged, the bar had been actively negligent and so was precluded from recovering any tort indemnity award.  *Id.* at 662.

In the present case, the district court found persuasive the dictum in *Max's*, namely, that recovery of attorneys' fees was "very doubtful" in the context of tort indemnity suits involving active-passive culpability.  *See id.* at 661.  The district court found that this dictum did not conflict with any decisions of Maryland's highest court and observed that this position also was consistent with Maryland's general presumption in favor of the "American Rule."  So, the district court held that Stradis was not entitled to attorneys' fees in its indemnity claim against Geri-Care.

On appeal, Stradis contends that the district court's holding conflicts with the decision of the state's highest court in *Nova Research, Inc. v. Penske Truck Leasing Co., L.P.*, 952 A.2d 275 (Md. 2008), which relied on that court's prior holding in *Jones v. Calvin B. Taylor Banking Co.*, 253 A.2d 742 (Md. 1969). According to Stradis, these decisions establish that Stradis, which was compelled to defend itself based on Geri-Care's conduct, is entitled to recover attorneys' fees from Geri-Care. We disagree.

*Nova Research* involved a lessor's contracts with Penske Truck Leasing Company (Penske) to rent "a tractor and trailer." 952 A.2d at 278. The rental agreements included indemnification clauses but did not expressly provide for recovery of attorneys' fees. *Id.* at 278-79. After a fatal accident occurred involving Penske's tractor and trailer, Penske incurred expenses related to an investigation and "environmental cleanup." *Id.* Penske sought indemnification from the lessor, asserting that the lessor had breached the contract by authorizing a non-permissive driver to drive the vehicle. *Id.* at 279. In its indemnity claim, Penske also sought recovery of its attorneys' fees expended in seeking indemnity.

In resolving this issue, Maryland's highest court explained that its prior decision in *Jones* established a limited "implied indemnity exception" to the American Rule regarding recovery of attorneys' fees. *Id.* at 282. But the court further explained that this exception was restricted to recovery of attorneys' fees arising from an indemnitee's need to defend against a third-party's lawsuit, not fees related to pursuit of a "first-party" indemnification claim. *Id.* Thus, the court held in *Nova Research* that Penske could not recover attorneys' fees related to its "first-party" indemnification claim. *Id.* at 285.

18

In *Jones*, a bank entered a contract with a company (the company) to act as its local escrow agent and to facilitate payments to the company's suppliers. 253 A.2d at 743. As part of the contract, two of the company's corporate officers personally guaranteed responsibility for any loss the bank suffered resulting from the transactions. *Id.* After the company declared bankruptcy, the bankruptcy trustee sued the bank to recover certain payments. *Id.* at 745-46. The bank, in turn, filed suit against the two corporate officers of the company seeking to recover the amounts the bank paid to the trustee, as well as the bank's attorneys' fees arising from the bank's defense against the bankruptcy trustee's lawsuit. *Id.* at 746. Even though the contract had not provided for recovery of attorneys' fees, the court in *Jones* employed equitable principles and implied in the contract a provision permitting recovery of those fees. *Id.* at 747-48.

We conclude that these two cases are inapplicable here. Both cases involved indemnity contracts and the extent to which certain expenses were recoverable when the contracts of indemnification did not include provisions relating (1) to an indemnitee's defense of an action brought by a third party, *Jones*, 253 A.2d at 746, or (2) to the recovery of fees in a "first party" action seeking indemnification, *Nova Research*, 952 A.2d at 289. Both these holdings related to whether expenses not addressed by the parties in their contracts nonetheless were recoverable under a theory of implied contract. Neither of the cases addressed the recovery of fees incurred by a tortfeasor in the defense of a tort action. And, manifestly, neither case involved a situation in which the indemnitee had been determined secondarily culpable in the tort action against which it was defending. These distinctions render the holdings in *Jones* and *Nova Research* inapposite to the present case.

19

We therefore decline Stradis' request that we recognize an exception to the American Rule to permit indemnification of attorneys' fees incurred in defending against a tort action in which that defending party has been found secondarily culpable.

Given the facts presented in this case and the absence of Maryland law requiring otherwise, we hold that the district court did not commit an error of law in relying on the American Rule in concluding that Stradis was not entitled to indemnification for its attorneys' fees incurred in defending against KeraLink's suit. *See Southpeak*, 777 F.3d at 675. Accordingly, the district court also did not abuse its discretion in denying Stradis' request for these attorneys' fees. *Id.*

## III.

For these reasons, we affirm the district court's award of summary judgment in favor of Stradis on its tort indemnity claim against Geri-Care, and we affirm the court's decision declining to include in that award Stradis' request for attorneys' fees.

*AFFIRMED*